IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JOSEPH SHELBY**                                                                                       **PLAINTIFF**

V.                                                                            NO. 3:24-cv-483-DPJ-ASH

**HINDS COUNTY, MISSISSIPPI, AKA HINDS**                            **DEFENDANTS**
**COUNTY BOARD OF SUPERVISORS; WANDA**
**EVERS in her official and individual capacity;**
**ROBERT GRAHAM in his official; and individual**
**capacity; JOHN DOES 1-10**

## COMPLAINT

Joseph Shelby campaigned for his boss, then-Supervisor Vern Gavin. Gavin lost to Wanda Evers in a close and highly contentious race. Defendants then retaliated against Shelby for supporting Gavin. For these reasons, COMES NOW THE PLAINTIFF and alleges:

### JURISDICTION, VENUE, JURY DEMAND, PARTIES

1. This Court has federal question jurisdiction as this action arises under the First Amendment through 42 U.S.C. § 1983.

2. Venue is proper in this Court because the events took place in Hinds County, Mississippi and because all Defendants reside there.

3. Plaintiff demands a trial by jury on all issues so triable.

### PARTIES

4. Plaintiff is an adult resident of Hinds County, Mississippi.

5. Defendant Hinds County, Mississippi, aka Hinds County, Mississippi Board of Supervisors, may be served with process on the President of the Hinds County, Mississippi

Board of Supervisors, Robert Graham, at 316 South President Street, Jackson, Mississippi 39203.

6. Defendant Wanda Evers is a member of the Board of Supervisors and is also being sued in an individual capacity. She can be served at her place of work, 316 South President Street, Jackson, Mississippi 39203.

7. Defendant Robert Graham is a member of the Board of Supervisors and is also being sued in an individual capacity. He can be served at his place of work, 316 S. President Street, Jackson, Mississippi 39203.

8. John Does are persons or entities unknown who participated in the unlawful acts complained of herein. The pleadings will be seasonably amended when they are identified.

## MTCA

9. The Mississippi Tort Claims Act is inapplicable to claims under federal law.

10. The Mississippi Tort Claims Act is inapplicable to torts of malice including tortious interference with contract.

11. The Mississippi Tort Claims Act is inapplicable to claims of breach of contract.

12. The Mississippi Tort Claims Act is not applicable to any of the claims in this lawsuit.

13. Nonetheless, a certified letter dated May 16, 2024, was sent to Defendant Hinds County through Hinds County Chancery Clerk, Eddie Jean Carr. (Exhibit 1)

14. The letter was received on or about May 20, 2024. (Exhibit 2)

15. Thus, Plaintiff has complied with the notice and exhaustion requirements of the Mississippi Tort Claims Act for all claims against Hinds County in this matter.

## FACTS

16. Wherever necessary, these facts should be understood as pled in the alternative.

SPOs and employment

17. Hinds County is governed by a Board of five Supervisors which are elected to four-year terms from their respective districts within the County.

18. A "Special Project Officer" SPO is an employee of Hinds County.

19. As pertinent here, SPOs work directly with one Supervisor to manage the office, engage with constituencies inside and outside of government, and assist the particular Supervisor in performing all his or her duties.

20. When a Supervisor leaves office, the usual practice at Hinds County has been for that Supervisor's SPOs to remain in employment for Hinds County.

21. The outgoing Supervisor will often begin this process by recommending the SPO to their successor, to another Supervisor, or to another department in Hinds County.

22. These transfers have generally been successful and uneventful.

23. This practice is part of a broader collection of employment policies, practices and handbooks adopted by Hinds County for its employees.

24. The purpose of these policies, handbooks and routine practices is to make Hinds County a more attractive place for employees to work, increasing the competitive position of the employer in the labor market and enticing employees to apply for, accept and remain in positions of employment with the employer.

25. Hinds County gives its employees assurances that they can reasonably rely on the County to follow its policies, practices, handbooks, and other employment rules.

26. The agreement of employees to commit to work for Hinds County and forego other valuable opportunities are built in part on these assurances, which are a significant part of the consideration given to them in exchange for the promise of their labor.

27. These policies, handbooks and routine practices comprise part of the employment contract whereby employees agree to work only in certain working conditions and for specific compensation.

Unlawful practice of retaliation by Graham

28. Recently, Supervisor Graham has begun disrupting this otherwise consistent employment practice in order to single out political opponents to punish and retaliate against.

29. Under Graham's new practice for Hinds County, all SPOs remain employed except those who have supported his political enemies or opposed his allies, and these individuals are fired.

30. Since 1988, it has been well established in this Circuit that this practice is unconstitutional. *Matherne v. Wilson*, 851 F. 2d 752 (5th Cir. 1988).

31. Graham knows that it is unconstitutional to have an employee of Hinds County fired because of the employee's support of a particular politician.

32. Graham personally knows this because he was sued in December 2022 for precisely this sort of political retaliation.

Facts concerning Shelby specifically

33. Plaintiff Shelby began working in July 2014 for former Hinds County Supervisor Darrell McQuirter.

34. During this time, Shelby was not written up nor did he receive any disciplinary actions against him.

35. In 2019, McQuirter lost his bid for re-election.

36. In 2019, McQuirter recommended Shelby as a Special Project Officer to Supervisor Vern Gavin.

37. At this time, Graham had opposed Shelby's continued employment because Graham was a political opponent of McQuirter, and wanted to see that McQuirter's entire staff was fired because they campaigned for McQuirter.

38. Gavin, however, did not agree to Graham's retaliatory aims, and hired Shelby.

39. Graham saw Gavin as a political opponent.

40. As context, Graham had previously voted to fire Gavin as Administrator of Hinds County on March 1, 2010, without cause.

41. Shelby began working for Gavin as Special Project Officer.

42. During this time, Shelby was not written up nor did he receive any disciplinary actions against him.

43. During Gavin's term, Graham had a number of serious disputes with Gavin over issues such as the multi-million-dollar White Oak Creek erosion project.

44. In 2023, Gavin ran for re-election.

45. Evers challenged Gavin.

46. Evers was strongly supported by Graham.

47. Shelby actively campaigned for Supervisor Gavin, often wearing shirts to support Gavin's re-election, handing out literature and speaking with constituents at events.

48. Evers and Graham witnessed Shelby vigorously campaigning for her opponent at these events.

49. The Democratic primary election between Gavin and his opponents was a close race that eventually led to a highly contentious runoff election between Gavin and Evers.

50. Evers was declared the winner of the runoff primary election.

51. Gavin challenged Evers' win in Hinds County Circuit Court citing voting irregularities and stating that Evers failed to meet the residency requirements to run for District 4 Supervisor.

52. The Court decided in Evers' favor and she was declared the Democratic candidate for District 4 Hinds County Supervisor.

53. In November 2023, Evers beat the Republican candidate to win the District 4 Supervisor's seat.

54. At about this time, Shelby sought a transfer to another department within Hinds County.

55. Gavin, Kenny Wayne Jones, the former County Administrator, Charles Sims, the former Public Works Director, and Bobby McGowan, Hinds County Supervisor, all recommended Shelby for transfer to Hinds County Public Works as a Crew Member.

56. To facilitate the transfer, Shelby submitted his application for the job.

57. Shelby was selected and accepted into the job.

58. Shelby waited for Hinds County to notify him of his start date with Public Works.

59. Meanwhile, the final meeting of 2023 also centered on further political disputes between Graham and Gavin about money.

60. Gavin supported providing $1MM in funding to a project at Jackson State University, while Graham opposed it on the ground that the new Board members should take it up in 2024.

61. Evers took office in January 2024.

62. At the first Board meeting on January 2, 2024, Evers nominated Graham to serve as President of the Board.

63. Graham then nominated Evers to serve as Vice-President of the Board.

64. Both Graham and Evers then voted to appoint Dion Quinn as interim county road manager and public works director.

65. Graham and Evers voted to appoint Lure Berry as interim county administrator.

66. On or about January 17, 2024, Shelby contacted Hinds County Personnel Director, Bridgette Smith, about the Crew Member position with Public Works and what to put on his time sheet since he had not been contacted about a start date.

67. Ms. Smith informed Shelby he was supposed to have reported to Public Works on January 2, 2024.

68. Shelby was not notified of the January 2, 2024, start date.

69. Dion Quinn allegedly received the paperwork concerning Shelby's transfer on or about January 17, 2024, and called to inform him to report to Public Works on January 22, 2024, to begin his employment as a Crew Member.

70. Shelby reported to Public Works on January 22, 2024, as instructed by Quinn.

71. Shelby worked for Public Works on the 22nd, 23rd and 24th.

72. During this time, Shelby was not written up nor did he receive any disciplinary actions against him.

73. However, Graham and Evers were working to get him fired.

74. Quinn and Berry were beholden to Graham and Evers for their positions - and any continuation of it - and knew that they would themselves be subject to termination if they did not fire Shelby.

75. For this reason and only this reason, Quinn and Berry followed Graham's and Evers's instructions to prepare termination documents and tell Shelby he was fired.

76. On January 25, 2024, Shelby received a Memorandum from Quinn that stated his employment was being terminated "due to an illegal hire."

77. This was false and a pretext.

78. Shelby was a long-time lawful employee of Hinds County.

79. Shelby lawfully sought and obtained a transfer to public works.

80. The true reason for firing Shelby was his support of Gavin.

81. On or about April 1, 2024, Graham and Evers voted to confirm Quinn and Berry as permanent in their positions.

## CAUSES OF ACTION

### COUNT 1: FIRST AMENDMENT RETALIATION

82. Plaintiff incorporates all averments in all other sections as if fully incorporated herein.

83. This Count is brought against all Defendants.

84. Pursuant to 42 USC 1983, it is unlawful for any person acting under color of law to violate the United State Constitution.

85. Plaintiff was fired because of his political support for Gavin.

86. Plaintiff was fired within a few weeks of Graham and Evers assuming control of the Board as President and Vice President and appointing Berry and Quinn.

87. The reason given for Plaintiff's termination was false and pretextual.

88. Evers and Graham worked together to instruct and require Quinn and Berry to fire Plaintiff.

89. But for Evers' and Graham's actions, Plaintiff would still be working for the Department of Public Works.

90. The acts of Defendants constitute a willful, intentional violation of the First Amendment.

91. Plaintiff has been harmed and Defendants are liable to Plaintiff for the same.

92. Plaintiff requests all the remedies described below under "Remedies."

93. This claim is brought against Defendant Hinds County, which is a person as defined by 1983 and subject to this law. To the extent not redundant with Defendant Hinds County, Defendants Evers and Graham in their official capacity are also sued.

94. Defendant Hinds County has a practice of singling out for retaliation those persons who support the political opponents of Graham.

95. Defendant Hinds County is not an arm of the state.

96. Defendant Hinds County lacks sovereign, qualified, absolute or any other immunity.

97. Defendants Evers and Graham are sued in their individual capacity.

98. Defendants Evers and Graham are persons acting under color of state law.

99. In their individual capacity, Evers and Graham lack sovereign immunity for violations of federal law.

100. They lack qualified immunity because it has been well established law for over 30 years that patronage dismissals like this are unconstitutional.

101. They lack absolute or legislative immunity because their actions in securing the dismissal of Plaintiff were not made in a legislative vote or other policymaking capacity, but were instead made in an administrative capacity.

COUNT 2: TORTIOUS INTERFERENCE

102. Plaintiff incorporates all averments in all other sections as if fully incorporated herein.

103. This Count is brought only against Evers and Graham individually, and not against Hinds County.

104. Plaintiff and Hinds County had a contract of employment in Plaintiff's position as an SPO and later as a Public Works Crew Member with Hinds County, Mississippi.

105. Defendants tortiously interfered with Plaintiff's employment relationship by unlawfully pressuring or requiring his bosses to fire him.

106. Defendants had no privilege or right to interfere with Plaintiff's employment.

107. Defendants' actions were done maliciously and with the intent to cause Plaintiff injury.

108. Plaintiff has been harmed and Defendants are liable to Plaintiff for the same.

109. Plaintiff requests all the remedies described below under "Remedies."

## COUNT 3: BREACH OF CONTRACT

110. Plaintiff incorporates all averments in all other sections as if fully incorporated herein.

111. This Count is brought only against Hinds County, and not against Evers or Graham individually.

112. Plaintiff and Hinds County had a contract of employment in Plaintiff's position as an SPO and later as a Public Works Crew Member with Hinds County, Mississippi.

113. Hinds County breached this contract by violating its own handbook, long-established practices, and policies.

114. Plaintiff has been harmed and Defendants are liable to Plaintiff for the same.

115. Plaintiff requests all the remedies described below under "Remedies."

## REMEDIES

116. Plaintiff seeks all remedies available under any applicable principle of law or equity, including but not limited to the following:

    A. Back pay and lost benefits;

    B. Reinstatement or front pay and lost benefits;

    C. Consequential damages and any other pecuniary harms flowing from Defendants' unlawful actions;

D. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendants' unlawful actions;

E. Nominal damages if no others are available;

F. Pre- and post-judgment interest;

G. Attorney fees;

H. Costs;

I. An order notifying Defendants' employees of their rights, notifying them that Defendants have violated the law, and prohibiting further violations of the law;

J. Any other equitable relief as this honorable Court deems appropriate.

THIS, the 16th day of August, 2024.

Respectfully submitted,

JOSEPH SHELBY

*/s/ Joel Dillard*
Joel F. Dillard (MSB No. 102404)
Joel F. Dillard, P.A.
775 North Congress Street
Jackson, Mississippi 39202
(601) 509-1372 x. 2
joel.f.dillard@gmail.com