UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH SHELBY                                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:24-CV-483-DPJ-ASH

HINDS COUNTY, MISSISSIPPI, et al.                                                    DEFENDANTS

ORDER

According to Joseph Shelby, two Hinds County supervisors persuaded the County to fire him for supporting an unsuccessful political candidate. Shelby therefore sued those supervisors and the County for First Amendment retaliation and state-law torts. Defendants move [13] to dismiss. The Court grants the motion in part and denies it in part.

I.    Background

For purposes of the motion to dismiss, the Court must take Shelby's well-pleaded allegations as true. *Robertson v. City of Plano*, 70 F.3d 21, 23 (5th Cir. 1995). Shelby worked for Hinds County from 2014 to 2024 as a "Special Project Officer," an administrative aide to a county supervisor. Compl. [1] ¶¶ 18–19, 33, 69, 76. Normal practice is for an SPO to remain employed in some capacity despite electoral turnover in supervisors. *Id*. ¶¶ 20–22.

During his employment as SPO for Supervisor Vern Gavin, Shelby promoted Gavin's 2023 re-election campaign against Defendant Wanda Evers. *Id*. ¶¶ 41, 44–47. Evers and another supervisor, Defendant Robert Graham, witnessed Shelby's campaign activities. *Id*. ¶ 48. Graham and Gavin were political rivals, and Graham "strongly supported" Evers's bid to unseat Gavin. *Id*. ¶ 46. She did so. *Id*. ¶ 51.

After Gavin lost to Evers, Shelby successfully applied for transfer to the County's public-works department. *Id*. ¶¶ 53–57. But Evers and Graham wanted Shelby fired due to his support

1

for Gavin, and they forced his ouster on contrived grounds shortly after he started the new job. *Id.* ¶¶ 73–80. Shelby sued Evers and Graham in their official and individual capacities and sued Hinds County as well.

II.     Standard

When deciding a Rule 12(b)(6) motion to dismiss, the "[C]ourt accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But the Court will not "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Watkins v. Allstate Prop. & Cas. Ins. Co.*, 90 F.4th 814, 817 (5th Cir. 2024) (quoting *King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022)). "Conclusory" means "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." *Black's Law Dict.* (11th ed. 2019), *quoted in Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III. Discussion

Shelby sued Hinds County, Evers, and Graham, pleading three counts: (1) First Amendment retaliation, (2) tortious interference with employment against Evers and Graham, and (3) breach of contract against the County. Defendants move to dismiss Shelby's retaliation claim on qualified-immunity grounds and counts two and three for failure to state a claim. Shelby responded [15], but Defendants filed no reply.

A. First Amendment Retaliation

Shelby sued Defendants under 42 U.S.C. § 1983, which provides relief against any "person" who, "under color of" state law, deprives another of his or her "rights . . . secured by the Constitution." Hinds County is considered "a person" under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

To state a claim for First Amendment retaliation, Shelby "must plead that: '(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.'" *Johnson v. Miller*, 126 F.4th 1020, 1029 (5th Cir. 2025) (quoting *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015)). Although Defendants collectively seek dismissal of this claim, the analysis differs for the County, so the Court begins there.

1. Hinds County

Like the individual defendants, the County asserted that it was "entitled to Qualified Immunity." Defs.' Mem. [14] at 3. But it offers no supporting authority, and qualified immunity covers individuals, not counties. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 406 (5th Cir. 2007). This being the only argument the County advanced, it has waived any other arguments.

*See Lofton ex rel. Leary v. Franklin County*, No. 5:22-CV-52-DCB-RHWR, 2023 WL 1999489, at *7 (S.D. Miss. Feb. 14, 2023) (collecting cases). The County's motion to dismiss the First Amendment retaliation claim is denied.

That said, because the County is a defendant, the official-capacity claims against Evers and Graham appear superfluous. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Shelby must therefore show cause why these claims should not be dismissed within 14 days of this Order.

        2.     Evers and Graham

As for Evers and Graham individually: "Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to show that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "[T]o hold that the defendant violated the law at step one of the qualified-immunity analysis . . . is simply to say that the plaintiff has stated a claim upon which relief may be granted." *Morgan*, 659 F.3d at 384.

Evers and Graham offer three arguments presumably supporting qualified immunity: (1) Shelby was an at-will employee, Defs.' Mem. [14] at 5; (2) there is no evidence or even allegation of Evers or Graham "directly expressing anything to Plaintiff or trying to stop him from exercising his [F]irst [A]mendment rights," *id*.; and (3) only final decisionmakers face liability under § 1983; *id.* at 5–6. These arguments seem directed to the first part of the qualified-immunity analysis rather than to the existence of a clearly established right. The arguments are not persuasive.

***Shelby's at-will employment status.*** Assuming Shelby was an at-will employee, Defendants never explain why that matters for the retaliation claim and offer no legal authority suggesting it does. Nor could they. As stated in *Cabrol v. Town of Youngsville*, "an at-will public employee may not be discharged for exercising his First Amendment right to freedom of expression." 106 F.3d 101, 108 (5th Cir. 1997) (citing *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990)); *see also Rankin v. McPherson*, 483 U.S. 378, 383–84 (1987) ("Even though [plaintiff] was merely a probationary employee, and even if she could have been discharged for any reason or for no reason at all, she may nonetheless be entitled to reinstatement if she was discharged for exercising her constitutional right to freedom of expression."). Indeed, this Court rejected this same argument when Defendant Graham asserted it in *King v. Hinds County*, No. 3:22-CV-728-DPJ-FKB, 2023 WL 8100542, at *2 (S.D. Miss. Nov. 21, 2023).

***No contact or conversation between Evers or Graham and Shelby.*** Evers and Graham say that "there is no evidence or allegations of Defendants directly expressing anything to Plaintiff or *trying to stop him* from exercising his first amendment rights." Defs.' Mem. [14] at 5 (emphasis added). That might have been *somewhat* more relevant had Shelby alleged a prior restraint on his speech, but that's not the claim. He asserts First Amendment retaliation.

To state that claim, Shelby must prove, among other things, that "the speech precipitated the adverse employment action." *Johnson*, 126 F.4th at 1029. Defendants offer neither analysis nor supporting authority explaining why this element—or any other—requires proof that they "directly expressed" something to Shelby. Without authority, the argument falls short.

To the extent that Defendants may suggest Shelby failed to plead facts stating a First Amendment retaliation claim, the Court would reject that argument too. Shelby must plead "enough fact to raise a reasonable expectation that discovery will reveal evidence of the

5

necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quotation mark omitted).

He has. Shelby says Graham advocated for firing SPOs "who have supported his political enemies or opposed his allies." Compl. [1] ¶ 29. Graham had tried once before to get Shelby fired for having worked for Graham's "political opponent" Darrell McQuirter, but the incoming supervisor, Gavin, "did not agree to Graham's retaliatory aims[] and hired Shelby." *Id.* ¶ 38. "Graham saw Gavin as a political opponent." *Id.* ¶ 39. And the two had a history of conflict. *See, e.g.*, *id.* ¶ 40 (alleging that Graham voted to fire Gavin when he was county administrator). When Evers ran against Gavin, Graham "strongly supported" her. *Id.* ¶ 46. Shelby did not; he often wore shirts supporting Gavin, handed out literature for him, and spoke to constituents at events. *Id.* ¶ 47. Evers and Graham knew Shelby was "vigorously campaigning" for his boss Gavin. *Id.* ¶¶ 46–48. And even though Shelby obtained another county job after the election, Evers and Graham coerced two county employees over whom they had leverage (Quinn and Berry) into firing Shelby on pretextual grounds. *Id.* ¶¶ 64–65, 73–77. The termination occurred within days of Shelby's move to the new job. *Id.* ¶ 71.

All of this happened after this Court denied Defendant Graham's motion to dismiss in *King*, another First Amendment retaliation case filed by a former Hinds County employee who was allegedly fired for supporting one of Graham's political rivals. 2023 WL 8100542, at *1; *see also* Compl. [1] ¶ 32 ("Graham personally knows [it is unconstitutional to fire an employee for supporting a rival] because he was sued in December 2022 for precisely this sort of political retaliation.").

The Court recognizes that this is just one side of the story. But under Rule 12(b)(6), the properly pleaded facts are assumed true and viewed in the light most favorable to the plaintiff. In that light, Shelby has pleaded a First Amendment retaliation claim.

***Final decision-making authority.*** Defendants argue that "[u]nder Fifth Circuit precedent, only a final decisionmaker—not an individual who recommends termination to the final decisionmaker—can be liable under § 1983 for interfering with that interest." Defs.' Mem. [14] at 5. They base that on *Beattie v. Madison County School District*, 254 F.3d 595 (5th Cir. 2001). But the Fifth Circuit explained in *Sims v. City of Madisonville*, that *Beattie* never made that holding—it considered municipal liability, not individual liability. 894 F.3d 632, 641 (5th Cir. 2018) (per curiam). While some Fifth Circuit cases at first misconstrued *Beattie*, those cases are not binding under the rule of orderliness. *Id.* Thus, *Sims* held that someone without ultimate decision-making authority can face liability under § 1983. *Id.*; *accord Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 306–07 (5th Cir. 2020). This Court noted these cases when Graham made this same argument in *King*, 2023 WL 8100542, at *3 n.2 (citing *Sims*, 894 F.3d at 639). His argument is not well taken.

Thus, Shelby sufficiently states a claim that Evers and Graham violated his First Amendment rights. But that's only half the qualified-immunity analysis. Shelby still bears the burden to show that Defendants violated clearly established law, even though Defendants never address that issue in their memorandum. *See Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016) (per curiam) (noting that plaintiff has burden to address both qualified-immunity prongs even without argument from defendant) (citing *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010)).

7

Shelby recognized his burden and argued that in 2024, when he was fired, his right to be free from such retaliation was clearly established. Pl.'s Mem. [16] at 9 (citing cases). Shelby is correct. *See Smith v. City of Madison*, 364 F. Supp. 3d 656, 662–63 (S.D. Miss. 2018) (noting "improper motive" of firing public employee for supporting opponent's campaign) (citing *Heffernan v. City of Paterson*, 578 U.S. 266, 268 (2016)). Some exceptions exist for positions where partisanship affects job performance, *Heffernan*, 578 U.S. at 270, but Defendants don't assert any such exceptions.

Because the supervisors aren't entitled to qualified immunity—and the County is ineligible for it—the Court denies the motion as to First Amendment retaliation.

B.    Tortious Interference with Employment

Shelby alleges that Graham and Evers tortiously interfered with his employment. "Tortious interference with employment requires (1) intentional and willful acts (2) calculated to cause damage to a plaintiff in his lawful business (3) that were done with malice and (4) resulted in actual damage and loss." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (citing *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001)). "Malice" here means "done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant." *McClinton*, 792 So. 2d at 976.

Defendants argue that Shelby fails these standards because he

> offered very little support for his claim of tortious interference against Defendants Evers and Graham in his complaint. His allegations were self-serving and conclusory in nature. There were no allegations which would lead to logical inferences that willful; intentional; and unlawful acts were committed by Evers and Graham. Plaintiff did not include any allegations of direct contact between him and either individual defendant.

Defs.' Mem. [14] at 7.

Working backwards, Defendants offer neither analysis nor authority suggesting that Shelby must prove "direct contact" between himself and them. *Id.* None of the elements for this tort indicate that such proof is required. Absent some authority, the Court rejects this position. More generally, the Court finds based on the same pleaded facts discussed in section III(A) that the Complaint plausibly alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (quotation marks omitted). The motion to dismiss this claim is denied.

C. Breach of Contract

Against the County alone, Shelby alleges breach of contract "by violating its own handbook, long-established practices, and policies." Compl. [1] ¶ 113. Defendants say the relevant employee handbook "asserts Plaintiff[']s employment [status] as Employment At-Will." Defs.' Mem. [14] at 7 (emphases omitted). Against this, Shelby argues that his Complaint on its face says nothing about at-will employment and that the handbook and other documents mentioned in his Complaint suffice to plead "the existence of a not-at-will contract." Pl.'s Mem. [16] at 12.

If an employee manual or handbook sets out rules the employer will follow, it creates a contractual obligation for the employer. *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356, 361 (Miss. 1992) (reversing summary judgment for employer). But Shelby's Complaint does not specify any guarantee made by the County in any handbook, policy, or other materials. Compl. [1] ¶¶ 23–27. Instead, Shelby pleads in conclusory fashion that the County "breached this contract by violating its own handbook, long-established practices, and policies." *Id.* ¶ 113.

9

But what exactly did the County promise? The Complaint is vague at best, and the Court won't speculate on the possible terms of a contract in deciding whether a plaintiff successfully pleads its breach. *See 2002 JBO Tr. No. 1 v. Royal Bank of Canada*, No. 12-1344, 2013 WL 871537, at *9 (E.D. La. Mar. 8, 2013) (dismissing claim for breach under *Iqbal* where complaint did "not provide any facts that would allow the Court to assess the obligations imposed on defendants by the contract and to determine whether plaintiffs have successfully pleaded facts demonstrating that defendants breached the contract terms"). The Court must take the pleaded facts as true, but "we cannot assume facts not alleged." *Robertson*, 70 F.3d at 23.

The Court grants the motion to dismiss Shelby's breach-of-contract claim but gives him 14 days to move for leave to amend to better state a claim, attaching the proposed amended complaint. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

IV.     Conclusion

The Court has considered all arguments presented. Any not specifically addressed here would not change the outcome. The Court grants the motion [13] in part and denies it in part. Shelby's claim for breach of contract is dismissed. Otherwise, the motion is denied.

Shelby may move to amend his breach-of-contract claim within 14 days as stated above. He must also show cause why the official-capacity claims should not be dismissed within 14 days of this Order. Failure to comply will result in an order dismissing those claims without further notice. Finally, the Court directs the parties to contact the chambers of United States Magistrate Judge Andrew S. Harris to address further proceedings, including the December 9, 2024 stay order.

**SO ORDERED AND ADJUDGED** this the 30th day of April, 2025.

                                        s/ *Daniel P. Jordan III*
                                        UNITED STATES DISTRICT JUDGE